**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LENNARD TOCCALINE, | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:20-CV-00029 (JCH) |
| v. | : | |
| | : | |
| STEPHEN FAUCHER, and | : | |
| ROLLIN COOK, | : | |
|     Defendants. | : | MARCH 23, 2024 |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 102)**

**I.     INTRODUCTION**

Lennard Toccaline ("Toccaline") brings this action against Stephen Faucher ("Faucher"), former Warden and Unit Administrator of the Brooklyn Correctional Institution, and Rollin Cook ("Cook"), former Commissioner of Corrections at the Department of Corrections ("DOC"), in their official and individual capacities, under section 1983 of title 42 of the United States Code and the Equal Protection Clause of the Fourteenth Amendment.  See First Amended Complaint ("First Am. Compl."). Toccaline alleges that the defendants violated his equal protection rights by overseeing and enforcing a DOC policy that discriminated against inmates convicted of a sexual offense.  See id.  The defendants have filed a Motion for Summary Judgment, see Defendants' Motion for Summary Judgment ("Defs.' Mot.") (Doc. No. 102), which Toccaline opposes, see Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp.") (Doc. No. 107).

For the reasons set forth below, the Motion is granted.

1

## II.   BACKGROUND

### A.   Factual Background[1]

Toccaline is an incarcerated inmate who is serving a sentence due to his conviction on a sexual offense.  See Plaintiff's Local Rule 56(a)2 Statement of Facts ("Pl.'s LR 56(a)2 Stmt.") ¶ 1 (Doc. No. 108); Defendants' Local Rule 56(a)1 Statement of Facts ("Defs.' LR 56(a)1 Stmt.") ¶ 1 (Doc. No. 102-2); First Am. Compl. ¶ 1.

Upon entering DOC custody, all inmates are assigned an Overall Risk Level on a 1-5 scale, with 5 being the highest rating.  See Classification Manual ("Manual"), Pl.'s Ex. A, at 7 (Doc. No. 107-1); First Am. Compl. ¶ 5. Inmates with lower risk levels are eligible for more benefits.  See Manual at 2-3; First Am. Compl. ¶ 6.  During Toccaline's incarceration, he was subject to DOC's Classification Manual which, until November 2021, provided that "[a]ny inmate serving a sentence for a sex related offense or having a history of sex related offenses shall be approved by the Commissioner or designee prior to being classified below risk level 3."  See Deletion of Policy Language, Pl.'s Ex. E (Doc. No. 107-5); Pl.'s LR 56(a)2 Stmt. ¶ 5; Defs.' LR 56(a)1 Stmt. ¶ 5; First Am. Compl. ¶ 19.  When he was admitted to DOC custody, Toccaline was assigned an Overall Risk Level score of 4.  See Plaintiff's Additional Material Facts ("Pl.'s AMF") ¶ 13; First Am.

---

[1] In their Local Rule 56(a)1 Statement of Facts, the defendants perplexingly cite only to plaintiff's First Amended Complaint, rather than admissible evidence, such as the DOC Policy Manual.  See generally Defs.' LR 56(a)1 Stmt.  Although the court believes disposition of this case in defendants' favor is warranted regardless of whether the court approaches defendants' Motion as a motion for summary judgment or as a motion for judgment on the pleadings, see Section IV, infra, the court notes that defense counsel would be well advised to fully comply with Local Rule 56(a) in the future.  See D. Conn. L. Civ. R. 56(a)3 (noting that each Statement of Material Fact must be "followed by a specific citation to" admissible evidence).

Because the defendants' Local Rule 56(a)1 Statement largely relies on, and cites to, allegations in plaintiff's Complaint, the court will cite to the parties' pleadings, in addition to the Local Rule 56(a) Statements and plaintiff's Exhibits, in summarizing the relevant facts.

Compl. ¶ 12; Defendants' Answer and Affirmative Defenses ("Answer") ¶ 12 (Doc. No. 101).

After participating in various rehabilitation programs and receiving no disciplinary infractions, Toccaline wrote a request to Faucher seeking a favorable recommendation that his Overall Risk Level be reduced to below level 3, which Faucher denied. See Pl.'s AMF ¶¶ 14-16; First Am. Compl. ¶¶ 14, 20; Answer ¶¶ 14, 20; First Denial, Pl.'s Ex. C (Doc. No. 107-3). The denial from Facuher stated: "I have reviewed your request. After reviewing this matter, I will not provide you with a favorable recommendation for a level reduction." See First Denial; First Am. Compl. ¶ 20; Answer ¶ 20. Subsequent appeals submitted by Toccaline were also ignored or denied. See Pl.'s AMF ¶ 17; First Am. Compl. ¶¶ 23-25; Answer ¶¶ 23-25; Appeal Denial, Pl.'s Ex. 4 (Doc. No. 103-4). Indeed, Faucher refused to provide a favorable recommendation to every inmate convicted of a sex offense who sought such a recommendation. See Pl.'s LR 56(a)2 Stmt. ¶ 6; Defs.' LR 56(a)1 Stmt. ¶ 6; First Am. Compl. ¶ 37.

On November 2, 2021, DOC changed its policy on classification of sex offenders by removing the provision that an inmate serving a sentence for a sex offense cannot receive a classification without the approval of the Commissioner or their designee. See Pl.'s LR 56(a)2 Stmt. ¶ 8; Defs.' LR 56(a)1 Stmt. ¶ 8; First Am. Compl. ¶ 30; Deletion of Policy Language.

Following the policy change, Toccaline was reclassified to an Overall Risk Level of 2. See Pl.'s LR 56(a)2 Stmt. ¶ 8; Defs.' LR 56(a)1 Stmt. ¶ 8; First Am. Compl. ¶ 31.

B.     Procedural Background

On January 7, 2020, Toccaline filed his Complaint against Faucher, Cook, and other DOC officials.  See Complaint (Doc. No. 1).  On January 13, 2020, the court granted Toccaline's Motion to proceed in forma pauperis.  See Order (Doc. No. 6).  The court also granted Toccaline leave to file a corrected Complaint, see Order (Doc. No. 7), which he filed on February 27, 2020, see Corrected Complaint (Doc. No. 8).  On May 1, 2020, the court issued an Initial Review Order permitting Toccaline's Equal Protection Clause claims against Faucher and Cook in their official and individual capacities, dismissing Toccaline's Equal Protection Clause claims against the other DOC defendants without prejudice, and dismissing Toccaline's Due Process Clause claims against all defendants with prejudice.  See Initial Review Order (Doc. No. 10).

On April 11, 2023, the court directed the Clerk's office to appoint pro bono counsel to represent Toccaline.  Attorney Kurzman and Attorney Herst appeared on Toccaline's behalf on April 26, 2023, and April 27, 2023, respectively.  See Notice of Appearance of Attorney Kurzman (Doc. No. 90); Notice of Appearance of Attorney Herst (Doc. No. 91).  The court subsequently granted plaintiff leave to file an Amended Complaint.  See Minute Entry (Doc. No. 99).  On August 17, 2023, Toccaline filed his First Amended Complaint, which sues Faucher and Cook in their individual and official capacities and alleges violation of section 1983 and the Equal Protection Clause.  See First Am. Compl.  The defendants filed their Answer and Affirmative Defenses on August 25, 2023.  See Answer.

On September 8, 2023, the defendants moved for summary judgment.  See Defs.' Mot.  The plaintiff filed his Opposition on October 18, 2023.  See Pl.'s Opp.

### III. LEGAL STANDARD

#### A. Motion for Summary Judgment

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016). If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

#### B. Motion for Judgment on the Pleadings

In deciding a motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), courts must "employ the same standard applicable to Rule 12(b)(6) motions to dismiss." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 78 (2d Cir. 2015). Therefore, courts "accept all factual allegations in the complaint as

true and draw all reasonable inferences in [plaintiffs'] favor." Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). To survive a Rule 12(c) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id.

## IV.     DISCUSSION

As a threshold mater, the court notes that the defendants' Motion for Summary Judgment does not contain any attached Exhibits or cite to any admissible evidence. Indeed, as the plaintiff correctly notes, the defendants' Local Rule 56(a)1 Statement cites almost exclusively to the allegations in plaintiff's First Amended Complaint, rather than any Exhibits. See Defs.' LR 56(a)1 Stmt.[2] Thus, the plaintiff contends, the court should treat the defendants' Motion as a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, which requires this court to accept all of plaintiff's factual allegations as true. See Hayden, 594 F.3d at 160. The plaintiff is correct to point out the infirmities in defendants' moving papers, and defense counsel would be well advised to comply with the requirements of Local Rule 56(a)3 in the future.

Nonetheless, this procedural complication is immaterial to the case at bar. First, the court is not precluded from treating defendants' Motion as a Motion for Summary

---

[2] Although the defendants' Local Rule 56(a)1 Statement cites to various allegations made in the First Amended Complaint, the defendants do not admit to every single allegation in the Complaint. See Defs.' LR 56(a)1 Stmt. Nor do the defendants admit to all of plaintiff's allegations in their Answer. See Answer. Although their Answer admits to most of plaintiff's factual allegations, it also denies certain allegations. See id.

Thus, it appears that, in citing to specific allegations from plaintiff's operative Complaint in their Local Rule 56(a)1 Statement, the defendants are, in effect, for purposes of their Motion for Summary Judgment, both (1) admitting to the accuracy of the cited allegations and (2) identifying these factual allegations as the relevant, material facts in this matter.

Judgment solely because the defendants have not fully complied with Local Rule 56(a). See D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result . . . in the Court imposing sanctions, including, when the movant fails to comply, an order denying the motion for summary judgment . . . ." (emphasis added)); Altman v. Inc. Vill. of Lynbrook, No. 18-CV-4984, 2020 WL 4587751, at *8-11 (E.D.N.Y. Mar. 31, 2020) (considering whether to convert a Rule 12(c) motion into a motion for summary judgment, despite defendants' failure to submit a Local Rule 56(a)1 Statement).  Here, the plaintiff had clear notice that the defendants filed a Motion for Summary Judgment, and they undoubtedly had the opportunity to respond to the Motion, meaning that there is no risk of prejudice for the court to treat it as such.  See Fed. R. Civ. P. 56(f) (noting that a court may grant summary judgment "[a]fter giving notice and a reasonable time to respond"); Hernandez v. Coffey, 582 F.3d 303, 307 (2d Cir. 2009) ("Ordinarily, formal notice is not required where a party 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings.'" (quoting Villante v. Dep't of Corr. of City of N.Y., 786 F.2d 516, 521 (2d Cir. 1986))).  Second, even if the court strictly adheres to the standard for a Rule 12(c) motion for judgment on the pleadings by accepting all the factual allegations in Toccaline's Complaint as true and drawing all reasonable inferences in his favor, see Hayden, 594 F.3d at 160, Toccaline's Complaint still fails as a matter of law.  See Section IV.A, infra.  The outcome of this case, therefore, remains the same regardless of whether the court

7

treats the defendants' Motion as a motion for summary judgment or a motion for judgment on the pleadings.

Accordingly, despite defendants' failure to fully comply with Rule 56(a), the court concludes that disposition of defendants' Motion for Summary Judgment in their favor is warranted.

A.    Equal Protection Analysis

A plaintiff may state an Equal Protection Clause violation where a government singles him out as a "class of one" for disparate treatment. See Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). The plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. In Petitpas v. Martin, a plaintiff-inmate sued various DOC officials, arguing that DOC's policy regarding sex offenders—the same policy at issue here—violated the Equal Protection Clause by discriminating against "sex offenders and prisoners with . . . [sex treatment need scores] score[s] of 2 or greater". No. 3:17-cv-01912, 2020 WL 5501394, at *2, *7-8 (D. Conn. 2020). The district court granted summary judgment to the defendants, and the Second Circuit affirmed, concluding that (1) inmates convicted of sex offenses—including the plaintiff—are not similarly situated to other inmates not convicted of sex offenses; and (2) the DOC policy had a rational basis. Petitpas v. Martin, No. 20-3557-PR, 2021 WL 6101469, at *2-3 (2d Cir. Dec. 22, 2021) (summary order).[3] As to the first issue, the Second Circuit succinctly reasoned that sex offenders and non-sex offenders are, by

---

[3] It appears that this decision, identified as a Summary Order, has not been published in the Federal Appendix.

8

definition, not similarly situated because an inmate's status as a sex offender "is a basic difference motivating their disparate treatment." See id. at *2.  As to the second issue, the court reasoned that, under rational basis review,[4] "[p]risoners who have committed sex offenses can rationally be deemed more dangerous to society and, hence, less eligible for early release programs."  See id. at *3 (quoting Green v. Armstrong, 189 F.3d 460 (2d Cir. 1999) (summary order)).  Because the Petitpas plaintiff did not show that there was no rationally conceivable reason to treat him less favorably than violent offenders who have not been convicted of a sexual offense, his claims failed as a matter of law.  See id.

As the plaintiff acknowledges, the facts and legal claims of Petitpas are very similar to those in the case at bar.  See Pl.'s Opp. at 10-11.  Indeed, this court concludes that Petitpas effectively forecloses plaintiff's Equal Protection claim against the defendants.  Although Petitpas is technically a nonbinding summary order, such decisions still constitute "highly persuasive authority" that is often "predictive of how the Second Circuit Court of Appeals would decide an issue in the future."  Liana Carrier Ltd. v. Pure Biofuels Corp., No 14-CV-3406, 2015 WL 10793422, at *4 (S.D.N.Y. Aug. 14, 2015).  Indeed, the court finds the reasoning of Petitpas—at both the appellate and trial level—to be not only persuasive, but also applicable to the highly similar facts and legal arguments in this case.  Even assuming that all of Toccaline's factual assertions are

---

[4] Because neither inmates nor sex offenders are a suspect class, see Lee v. Governor of New York, 87 F.3d 55, 60 (2d Cir. 1996), rational basis review applies.  See Doe v. Cuomo, 755 F.3d 105, 113 (2d Cir. 2014) ("[B]ecause it is not constitutionally suspect to distinguish between people who have been convicted of sex offenses and people who have not, such line-drawing is reviewed deferentially under rational basis scrutiny.").

true, the holding and reasoning of Petitpas foreclose his Equal Protection claim.[5]  See Kelsey v. Sherman, No. 22-CV-1934, 2023 WL 3739925, at *8-9 (S.D.N.Y. May 31, 2023) (dismissing plaintiff's Equal Protection Clause claim as a matter of law under Rule 12(b)(6), pursuant to Petitpas, because "sex offenders are not similarly situated with offenders who are convicted of non-sex crimes").

Toccaline's arguments to the contrary are unavailing.  Most notably, Toccaline argues that "there is a core and key distinction between Petitpas and the instant lawsuit – the removal of the Policy at issue from the Manual in 2021."  See Pl.'s Opp. at 11. Specifically, he asserts that, because "the DOC changed the Manual to similarly situate and treat inmates convicted of sexual offense the same as all other inmates for the purposes of Overall Risk Level reduction, it is conceivable that the [Second] Circuit would revisit its decision in Petitpas in light [of] the removal of the Policy from the Manual."  Id.  The court respectfully disagrees.  DOC's decision to remove an additional hurdle for sex offenders does not constitute an admission that sex offenders and non-sex offenders are, in fact, the same, as the plaintiff contends.  Nor is there any reason for this court to conclude that Petitpas might have come out differently had the policy change been part of the record.  In reaching its conclusion that sex offenders and non-sex offenders are not similarly situated, the Petitpas court relied on case law and its own commonsense reasoning.  See Petitpas, 2021 WL 6101469, at *2.  The reasoning of Petitpas provides no basis upon which this court could conclude that the Second

---

[5] Because the plaintiff's substantive Equal Protection Clause claim fails as a matter of law, the plaintiff's suit against the defendants necessarily fails regardless of whether it is brought against them in their individual or official capacities.  Nonetheless, the court further notes that, because the plaintiff seeks monetary damages from the defendants, and does not seek prospective, injunctive relief, see First Am. Compl. at 10-11, his claims against the defendants in their official capacities are barred by the Eleventh Amendment.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).

10

Circuit might have decided that sex offenders and non-sex offenders are, indeed, similarly situated, had it known of DOC's policy change.

In turn, the court similarly disagrees with Toccaline's contention that "[t]he lack of rational basis for the Policy is highlighted by the DOC revising the Manual to remove the Policy at issue in 2021," and that, "[i]f the Policy had rationally been based upon public safety, the DOC would not have changed the Policy."  Pl.'s Opp. at 10.  An agency's decision to rescind a policy does not mean that the policy lacked any rational basis.  Rational basis review is deferential and a very high bar to overcome, and a policy will be upheld if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification."  FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993).  Like the defendants in this case, the Petitpas Court cited public safety as a rational basis, and stated that "[p]risoners who have committed sex offenses can rationally be deemed more dangerous to society . . . ."  Petitpas, 2021 WL 6101469, at *3 (quoting Green, 189 F.3d at 460).  Here, the court cannot conclude that DOC's policy change is indicative of a lack of rational basis, even if the court assumes, arguendo, that the policy—and defendants' enforcement of the policy—was objectionable and imprudent.  Aside from the policy change, Toccaline has not raised any other arguments as to why his case is distinguishable from Petitpas.[6]  Thus, Toccaline's argument that the policy lacked any rational basis must fail.

---

[6] Like the plaintiff in Petitpas, Toccaline asserts that DOC's policy lacked rational basis because "[r]ecidivism rates for inmates convicted of sexual offenses are broadly comparable," and he cites a 2017 study from the Office of Personnel Management on the recidivism rate of sex offenders.  See Pl.'s Opp. at 9 (citing 2017 Sex Offender Study, Pl.'s Ex. G (Doc. No. 107-7)).

Even taking this single study at face value, however, the court cannot say that plaintiff has "shown that there is no rationally conceivable reason for the DOC to treat him less favorably . . . than violent offenders who have not been convicted of a sex offense."  Petitpas, 2021 WL 6101469, at *3.

Toccaline also asserts that, because the defendants describe the previous policy as "unconstitutional" in their Local Rule 56(a)1 Statement, this "acknowledgement defeats Defendants' argument that Plaintiff's constitutional claim fails as a matter of law." Pl.'s Opp. at 6. Again, the court respectfully disagrees. While it is perplexing to this court that the defendants call the policy "unconstitutional" in their Local Rule 56(a)1 Statement, given the arguments they make in their Motion as well as the holding in Petitpas, this single, possibly offhand statement by defendants does not alter the court's conclusion that Toccaline's suit fails as a matter of law. As discussed above, Toccaline's Equal Protection Clause claim under section 1983 cannot succeed because (1) sex offenders, such as Toccaline, and non-sex offenders are not similarly situated and (2) there was a rational basis for the DOC's now-abrogated policy. The court will not permit a legally futile claim to go forward solely because of a single statement made in the defendants' Local Rule 56(a)1 Statement.

B.    Qualified Immunity

In addition, the court agrees with the defendants that, even if it were to hold that Toccaline's claim is viable, the defendants would nonetheless be entitled to qualified immunity. Qualified immunity "affords law enforcement officers a broad shield from claims for money damages arising from the performance of their duties." Ganek v. Leibowitz, 874 F.3d 73, 80 (2d Cir. 2017). "The shield applies 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" Id. (quoting

---

Showing comparable recidivism rates is insufficient, in this court's view, to rebut the Second Circuit's conclusion that "[p]risoners who have committed sex offenses can rationally be deemed more dangerous to society . . . ." Petitpas, 2021 WL 6101469, at *3 (quoting Green, 189 F.3d at 460).

Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). Here, even assuming arguendo that the defendants violated Toccaline's rights under the Equal Protection Clause, and even accepting all his factual allegations as true and drawing all inferences in his favor, his claim cannot overcome the second prong of the qualified immunity analysis. For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741. Throughout the period where Toccaline was subjected to disparate treatment, pursuant to DOC's pre-November 2021 sex offender policy, there was no law clearly establishing that such disparate treatment of sex offenders, as compared to non-sex offenders, was unconstitutional. Indeed, by 2020, there was persuasive, but noncontrolling, authority holding the contrary. See Petitpas, 2020 WL 5501394, at *7-8. It is therefore "beyond reproach that the [defendants'] conduct was not objectively unreasonable in light of existing law." Coollick v. Hughes, 699 F.3d 211, 220 (2d Cir. 2012). Accordingly, although the court concludes that Toccaline's Equal Protection claim fails as a matter of law, even if it did not, the defendants would be entitled to qualified immunity.

## V.    CONCLUSION

For the reasons stated above, the defendants' Motion for Summary Judgment (Doc. No. 102) is granted. The Clerk is respectfully directed to close the case. The court thanks Attorney Kurzman and Attorney Herst for their pro bono service.

**SO ORDERED.**

Dated at New Haven, Connecticut this 23rd day of March 2024.

                                                /s/ Janet C. Hall
                                               Janet C. Hall
                                               United States District Judge